UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                        2:07-cr-119-FtM-29SPC

MARK SCHWINN
_____

### OPINION AND ORDER

On February 7, 2008, United States Magistrate Judge Sheri Polster Chappell submitted a Report and Recommendation (Doc. #41) to the Court recommending that Defendant's Motion to Suppress Evidence (Doc. #24) be denied. Defendant filed Objections to Order of Magistrate Judge (Doc. #41) on February 19, 2008. No response from the government has been filed, and the time to file such a response has expired. The Court heard oral argument on March 17, 2008.

### I.

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b()1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the

district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. 1609, 94th Cong., § 2 (1976)).  The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994).

## II.

Defendant has made four objections to the recommendation that his motion to suppress be denied.  Defendant asserts that (1) the information in the affidavit in support of the search warrant was stale, and therefore probable cause was not established; (2) the search warrant failed to describe with particularity the place to be searched; (3) the agents exceeded the scope of the search warrant during its execution; and (4) the agents failed to give defendant required Miranda warnings.  These are the same four issues raised before the magistrate judge.  The Court will discuss each in turn.

### A.  Stale Information/Lack of Probable Cause:

Although the focus of defendant's objection is on the staleness of information provided in the search warrant affidavit, his objection is bottomed on the argument that the affidavit fails to set forth probable cause to believe child pornography would be at the location to be searched on the day the search warrant was

-2-

issued.   The Court focuses on the information within the four corners of the search warrant affidavit.

The general legal principles are well established.   In the context of a search warrant affidavit, the government "must reveal facts that make it likely that the items being sought are in that place when the warrant issues." United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994)(citation omitted), cert. denied, 513 U.S. 967 (1994).   "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Martinelli, 454 F.3d 1300, 1307 (11th Cir. 2006)(citation omitted).   Because probable cause must exist when the magistrate judge issues the search warrant, United States v. Santa, 236 F.3d 662, 672 (11th Cir. 2000), stale information may undermine the ability to establish find probable cause.   "Determinations of timeliness as an element of probable cause must be made on a case by case basis." Cauchon v. United States, 824 F.2d 908, 911 (11th Cir. 1987).   The basic criterion as to the duration of probable cause is the inherent nature of the crime, thus giving more leeway to information about a continuous course of illegal conduct than to a single criminal act.   Cauchon, 824 F.2d at 911.   There is no "talismanic rule" establishing time limitations, but each case is reviewed on the unique facts presented, taking into account the maturity of the information, the nature of the suspected crime (i.e., whether a

discrete crime or an ongoing offense), the habits of the accused, the character of the items sought, and the nature and function of the premises to be searched. Harris, 20 F.3d at 450 (citations omitted). Even if the information is stale, the use of stale information "is not fatal where the government's affidavit updates, substantiates, or corroborates the stale information." United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000)(quotations and citations omitted).

The search warrant Affidavit (Doc. #43) in this case sought to search for child pornography at "1903 Mark Avenue, Unit #302, Punta Gorda, Florida 33950" (Unit #302). Affiant J. Keith Cramsey first set forth his law enforcement and educational background (Affidavit, ¶¶ 1, 2), the basis for the information he had obtained (id. at ¶ 3), and the nature of the items sought to be seized from the home of Mark Lewis Schwinn (id. at ¶ 4). The Affidavit then describes the Enforcement Authority of the Department of Homeland Security, United States Immigration and Customs Enforcement as it relates to child pornography (id. at ¶¶ 5, 6). The Affidavit next sets forth the affiant's investigative experience with child pornography and computers, and states the following generalizations based upon that experience: (1) The majority of child pornography collectors have a sexual attraction to children, collect sexually explicit materials, rarely if ever dispose of their sexually

-4-

explicit materials[1] and may go to great lengths to conceal and protect their collections from discovery, and almost always maintain their collections in the privacy and security of their own homes or other secure locations; (2) The Internet and World Wide Web afford child pornography collectors several different venues for obtaining, viewing, and trading child pornography in a relative secure and seemingly anonymous fashion; and (3) that child pornography is not readily available in retail establishments, resulting in persons who wish to obtain child pornography to order it from abroad or by discreet contact with others who have it available, with the majority of child pornography websites originating and being operated in foreign countries.   (Id. at ¶7(a)-(e).)

After defining an "Internet Protocol Address," (id. at ¶ 8), the Affidavit describes an investigation known as Project Flicker which formed the background for the specific investigation then being conducted by the affiant.  (Id. at ¶¶ 9-15.)  Project Flicker was an investigation of a criminal organization operating a commercial child pornography website known as "Home Collection" and numerous commercial child pornography websites and using various PayPal accounts to process the payments for access to the member-restricted websites.   Records seized during Project Flicker

---

[1]At the evidentiary hearing, the affiant stated that a more accurate statement would have been that people who collect child pornography rarely if ever dispose of it to the point it cannot be recovered by law enforcement.  (Doc. #30, p. 66.)

established that a person using an email account address of varland2004@aol.com and identifying himself as Mark Schwinn, and using Unit #302 as a credit card billing address, had purchased four website memberships to the child pornographic websites discovered in Project Flicker; two of these were for "HomeCollection" and two were for "AngelCollection." (Id. at ¶ 13.) On September 29, 2006, October 5, 2006, October 7, 2006, and October 14, 2006, "Mark Schwinn" using an email account address of varland2004@aol.com, purchased 30 days access to the four different child pornography collection websites. (Id.) The two HomeCollection websites were described in some detail, with descriptive examples of the child pornography. (Id. at ¶¶ 14, 15.)

After receiving this information, the affiant determined from public and non-public databases that Mark Lewis Schwinn was issued a Florida Drivers License on February 5, 2005 using the Mark Avenue address. (Id. at ¶ 17.) Additionally, the affiant determined that Schwinn is a registered sexual offender in the State of Florida stemming from a conviction in Illinois on or about May 6, 1998 for aggravated criminal sexual abuse of a minor, and was currently in compliance with the law regarding registered sex offenders. (Id. at ¶ 18.) On July 31, 2007, affiant received a response to a subpoena indicating that Schwinn, at the Mark Avenue address, had been a customer of America On Line since July 16, 2005, the account was still active as of July 31, 2007, that the screen name was varland2004, and that Schwinn is the only

-6-

subscriber listed on the account and varland2004 is the only screen name on the account.  (Id. at ¶ 19.)   Surveillance officers interviewed an unidentified neighbor who lives in the apartment complex who stated that "Mark" and "Rose" live in Unit #302.  The neighbor stated that Unit #302 had two occupants but was designed to have three people live there in three separate bedrooms that share a common kitchen and bath.  (Id. at ¶ 20.)  The Search Warrant was obtained on August 8, 2007, and executed on August 17, 2007.

Thus, in reviewing the search warrant Affidavit, the magistrate judge had the following information: (1) As of approximately a week prior to the issuance of the search warrant, Mark Schwinn resided at Unit #302 and had resided at that address for over two years, beginning on or before February 5, 2005, when he received a Florida driver's license showing that as his residence address; (2) Schwinn had internet access via a America On Line account registered to him at Unit #302 for approximately two years, beginning July 16, 2005; (3) Schwinn's screen name for this American On Line account was varland2004, he was the only subscriber listed on the account, and varland2004 was the only screen name on the account; (4) Schwinn was currently a registered sexual offender in the State of Florida as the result of an Illinois conviction in May, 1998 for aggravated criminal sexual abuse of a minor; (5) On September 29, 2006, a person using an email account address of varland2004@aol.com, identifying himself

as Mark Schwinn, and using Unit #302 as a credit card billing address, purchased a membership in a child pornographic website which allowed access for 30 days; (6) On October 5, 2006, a person using an email account address of varland2004@aol.com, identifying himself as Mark Schwinn, and using Unit #302 as a credit card billing address, purchased a membership in a different child pornographic website which allowed access for 30 days; (7) On October 7, 2006, a person using an email account address of varland2004@aol.com, identifying himself as Mark Schwinn, and using Unit #302 as a credit card billing address, purchased a membership in a third child pornographic website which allowed access for 30 days; (8) On October 14, 2006, a person using an email account address of varland2004@aol.com, identifying himself as Mark Schwinn, and using Unit #302 as a credit card billing address, purchased a membership in a fourth child pornographic website which allowed access for 30 days; (9) Schwinn's America On Line account remained current at Unit #302 as of approximately a week before the issuance of the search warrant.[2]  The Court finds that the totality of the circumstances allowed the magistrate judge to conclude that there was a fair probability that child pornography was in Unit #302 as of the date of the issuance of the search warrant.

---

[2]In an abundance of caution, the Court has excluded the affiant's experience-based opinions about collectors, since there was minimal evidence that Schwinn was a collector and at least one inaccurate statement in this portion of the Affidavit.

The Court rejects defendant's proposition that "the issue is whether there was sufficient reason to believe that child pornography from the source alleged in the affidavit would be found on Mr. Schwinn's computer at the time the search warrant was executed." (Doc. #41, p. 3.)  This issue is whether it is likely that child pornography will be found, regardless of its source, based upon the information alleged in the affidavit.  Additionally, as defendant correctly states earlier (Doc. #41, pp. 1-2), the pertinent time is the time the warrant was issued, not when it was executed.

Defendant argues that the magistrate judge was factually inaccurate in stating "the defendant purchased access to four child pornography websites." (Doc. #41, p. 3.)  Defendant argues that only two of the four websites he purchased were alleged to contain child pornography.  The Court disagrees.  Only the two HomeCollections were described in detail with examples of child pornographic images.  However, the Affidavit clearly stated that all four websites contained child pornography.  (Doc. #43, ¶ 13.)  The affiant's mistaken admission to the contrary at the evidentiary hearing (Doc. #30, pp. 56-57) is not controlling.

The Court also disagrees with defendant's argument that his prior conviction was "very minimally relevant" because it was so remote in time.  While the conviction was from 1998, at the time the search warrant was sought defendant was still on sex offender restrictions in Florida.

Defendant correctly notes certain information which was not stated in the Affidavit, including that there was no evidence defendant renewed his memberships, or had accessed the websites, or had the ability to access the websites after the expiration of the 30 day memberships, or that the websites were exclusively or primarily child pornography, or that child pornography was stored on his computer or been downloaded from the websites.  The issue before the magistrate judge in deciding whether to authorize a search warrant is not what was not in the affidavit, but whether what was in the affidavit is sufficient.  The Court concludes that it was, and overrules the objection.

**B. Particularity of Place to be Searched:**

Defendant argues that the search warrant fails to particularly describe the place to be searched, and therefore was invalid. Specifically, defendant argues that there were multiple dwelling units in Unit #302, and if probable cause existed it was only as to his room within Unit #302.  (Doc. #41, pp. 12-17.)

The Fourth Amendment to the United States Constitution prohibits the issuance of any warrant except on "particularly describing the place to be searched and the persons or things to be seized."  The particularity is required to be set forth in the search warrant, and the supporting affidavit will not save a facially invalid warrant.  United States v. Pratt, 438 F.3d 1264, 1269-70 (11th Cir. 2006).  In evaluating the description of the place to be searched, "it is enough if the description is such that

-10-

the officer with a search warrant can, with reasonable effort[,] ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503 (1925). "The manifest purpose of this particularity requirement was to prevent general searches." Maryland v. Garrison, 480 U.S. 79, 84 (1987). This does not, however, require the warrant's description of the place to be searched to meet technical requirements. Rather, "[t]he warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." United States v. Burke, 784 F.2d 1090, 1093 (11th Cir. 1986), cert. denied, 476 U.S. 1174 (1986); see also United States v. Ellis, 971 F.2d 701, 703 (11th Cir. 1992).

A difficulty can arise with multiple-dwelling premises, where the place to be searched can be described in broader terms than is appropriate because of a mistaken belief that there is only a single apartment when in fact there are multiple dwelling units. Thus in Garrison the search warrant description was "the premises known as 2036 Park Avenue third floor apartment," but in fact there was more than one apartment on the third floor. The Court stated: "Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor on 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested

warrant." <u>Garrison</u>, 480 U.S. at 85.  Finding the officers had no such knowledge, the Supreme Court upheld the search warrant.

Thus, the general rule is that probable cause must exist for each unit of a multi-unit structure.  "Multiple circuit courts have held that to satisfy the particularity requirement when a search involves a building with multiple, separate residency units, the warrant must specify the precise unit that is the subject of the search. . . . Thus the general rule is that a warrant that authorizes the search of an undisclosed multi-unit dwelling is invalid."  <u>United States v. Perez</u>, 484 F.3d 735, 741 (5th Cir. 2007).  The exception in <u>Garrison</u> has been summarized as: "The police can validly search a multi-unit dwelling even if the search warrant was only for a single-unit dwelling, provided the police reasonably believed that the dwelling contained only one unit."  <u>United States v. Mousli</u>, 511 F.3d 7, 12 (1st Cir. 2007).

In this case, the affiant admittedly <u>did</u> know that Unit #302 contained multiple dwelling units.  The affiant testified that prior to obtaining the search warrant surveillance officers had spoken with a neighbor who stated that there was a possibility that a female lived in the apartment with defendant, although the affiant did not know if this was together or separately.  (Doc. #30, pp. 32-33.)  The neighbor had informed the officer that after Hurricane Charlie some of the units had been turned into three bedroom efficiency apartments, i.e., that the three bedrooms would have been separate and housed other individuals, and there were

-12-

common areas used by all.  (Doc. #30, pp. 33, 68.)  The neighbor
said that a "Mark" and a "Rose" lived there, but the affiant did
not know if they lived there together, or shared all three
bedrooms, or were splitting it into efficiencies, and the officers
did not follow up on such details in case the neighbor knew those
people.  (Doc. #30, pp. 69-70.)  The affiant summarized that what
he knew was that Unit #302 was one apartment complex with three
bedrooms which could possibly be rented out by themselves, sharing
common areas.  (Doc. #30, p. 70.)  The affiant related to the
search team members that there could be a situation where the other
units would not be part of defendant's unit.  (Doc. #30, p. 70.)

Despite this knowledge, the affiant sought and the search
warrant authorized a search of "1903 Mark Avenue, Unit #302, Punta
Gorda, Florida 33950, more particularly described in Attachment A."
Attachment A to the Search Warrant described the premises as "1903
Mark Avenue, Apartment #302, Punta Gorda, Florida 33950-4239 . . .
A two-story apartment complex with light green concrete walls and
a red roof located at the intersection of Mark Avenue and Charlotte
Street in Punta Gorda, Florida.  Unit #302 is located in the center
exterior hallway of the building and can be seen from Mark Avenue
looking south toward the building.  The unit has a red door with
"302" in black numbers.  Mark Avenue is located just northwest of
the intersection of Interstate 75 and Highway 17."  The affiant
testified that his understanding of the search warrant was that it

-13-

authorized the search all of "Unit 302," including all three
bedrooms.  (Doc. #30, p. 32.)

The affiant testified that by executing the search warrant he
confirmed the material pre-search information.  Affiant determined
that the main entrance to the apartment was marked "302" (Doc. #30,
pp. 29-30); that it was a three-bedroom apartment with a shared
common dining room, bathroom and kitchen in the center of the
apartment (Doc. #30, p. 31); and in addition to the bedroom marked
"302" there was another bedroom with an open door which contained
some items but did not appear to be occupied, and a third bedroom
with a locked door (Doc. #30, p. 31).  The officers did not ever
enter the locked bedroom, which defendant told them was occupied by
"Willie."  (Doc. #30, pp. 31-32.)  The officers did search the
other bedroom, finding things stored by defendant (Doc. #30, pp.
40-41), as well as the bedroom marked "302."

The Court concludes that the Search Warrant did not satisfy
the particularity requirement as to the two rooms in Unit #302
other than the room specifically marked #302 which was occupied by
Schwinn.  The search warrant was therefore constitutionally
overbroad.  United States v. Travers, 233 F.3d 1327, 1329 (11th
Cir. 2000).  The officers knew that Unit #302 was a multi-unit
dwelling, and only had information tying defendant to the one room.
Obtaining a search warrant for the entire Unit #302 in light of
such knowledge allowed the very general search that the
particularity requirement was designed to prevent.

The remedy for such a violation is the suppression of the evidence seized from the second bedroom, i.e., the bedroom other than the one with 302 on the door.  When there is a violation of the particularity requirement and a resultant general search, only the evidence seized by the officers while acting outside the proper boundaries of the search warrant will be suppressed.  United States v. Hendrixson, 234 F.3d 494, 497 (11th Cir. 2000); Travers, 233 F.3d at 1329.  This is all that is necessary to deter similar future unlawful conduct.

### C.   Execution of Search Warrant/Miranda Warnings:

Defendant argues that the agents exceeded the scope of the search warrant by failing to complete the search within a reasonable time in order to prolong his interview, and failed to advise him of his Miranda rights under Miranda v. Arizona, 384 U.S. 436 (1966).  After reviewing the Report and Recommendation and the transcript of the evidentiary hearing, the Court fully agrees with the findings of fact and conclusions of law made by the magistrate judge as to these two issues.  Accordingly, the Court will overrule these objections.

Accordingly, it is now

**ORDERED:**

1.   The Magistrate Judge's Report and Recommendation (Doc. #37) is **accepted and adopted**, as amended and modified by this

Opinion and Order, and it is specifically incorporated into this Opinion and Order.

2.   Defendant's Motion to Suppress (Doc. #22) is **GRANTED** as to items seized from the second bedroom, and is otherwise **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __21st__ day of March, 2008.

JOHN E. STEELE
United States District Judge

Copies:
Magistrate Judge
Counsel of Record
DCCD